**Leah C. Lively**, OSB No. 96241
livelyl@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

**Nancy W. Anderson**, *admitted pro hac vice*
andersonn@lanepowell.com
**Kirsten G. Daniels**, *admitted pro hac vice*
danielsk@lanepowell.com
**LANE POWELL** PC
1420 Fifth Avenue, Suite 4100
Seattle, Washington 98101-2338
Telephone: 206.223.7000
Facsimile: 206.223.7107

Attorneys for Defendants Velocity Express, Inc.,
Jeffrey Hendrickson, Vincent Wasik

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,** | Case No. 09-CV-0864-MO |
| Plaintiff, | Defendants Velocity Express, Inc.'s, Jeffrey Hendrickson's, and Vincent Wasik's **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **VELOCITY EXPRESS, INC.,** a corporation; **JEFFREY HENDRICKSON,** an individual; and **VINCENT WASIK,** an individual, | |
| Defendants. | |

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.      The Department Cannot Meet Its Burden Of Proving Messrs. Wasik And
        Hendrickson Are "Employers" Under The FLSA. ...................................................... 1

II.     The Department's Evidence That Is Not Properly Authenticated, Not Based On
        Personal Knowledge, And That Does Not Comply With LR 56.1(b)-(d) Should
        Be Stricken And Not Considered By The Court. ........................................................ 5
        A.      The Department's Improperly Submitted Deposition Testimony Should Be
                Stricken. ................................................................................................................ 5
        B.      The Declarations From the Department's Witnesses Should Be Stricken
                To The Extent They Fail To Comply With The Federal Rules Of
                Evidence. .............................................................................................................. 6
        C.      The Department's Response to Concise Statement of Material Facts Fails
                to Comply With Local Rule 56-1(b)-(d). ............................................................ 8

III.    The Department Fails To Raise Genuine Issues Of Material Fact To Avoid
        Summary Judgment:  The Totality Of The Circumstances Demonstrates That The
        Delivery Drivers Are Independent Contractors Under The FLSA. ........................... 9
        A.      Factor One:  Control Over the Manner In which the Work Is to Be
                Performed. ............................................................................................................ 9
                1.      Control Over Routes and Schedules, Supervision, and Rates of
                        Pay. .......................................................................................................... 12
        B.      Factors Two and Three:  Drivers Had Opportunity for Profit and Loss and
                Made Investment In Their Business, with Opportunity To Hire Helpers. .......... 15
                1.      Drivers Had Opportunities for Entrepreneurial Activities. ..................... 15
                2.      Drivers Had Opportunities for Profit and Loss, with Attendant
                        Opportunities for Investment in Their Business. .................................... 15
        C.      Factor Four:  Special Skills or Licensing. ........................................................ 18
        D.      The Contract Delivery Drivers Did Not Have a Permanent Relationship
                With Velocity Express. ...................................................................................... 18
        E.      The Integration Factor Does Not Support the Department's Position. ............... 21
        F.      The Drivers Were Not Officially Organized Into "Units"; Rather They
                Were Independent Businesses. ............................................................................ 23
        G.      The Drivers Were Not Treated Like "Employees." ........................................... 23

IV.     Conclusion. ................................................................................................................ 23

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adcock v. Chrysler Corp.*,
    166 F.3d 1290, 1293 (9th Cir. 1999) ................................................................ 17

*American Hospital Supply Corp. v. Hospital Products Ltd.*,
    780 F.2d 589, 599 (7th Cir. 1986) ................................................................. 11

*Beyene v. Coleman Security Servs.*,
    854 F.2d 1179, 1182 (9th Cir. 1988) ............................................................... 5

*Bonnette v. California Health & Welfare Agnecy*,
    704 F.2d 1465, 1470 (9th Cir. 1983) ............................................................... 1

*Boucher v. Shaw*,
    572 F.3d 1087, 1091-92 (9th Cir. 2009) ......................................................... 1, 9

*Broussard v. L.H. Bossier, Inc.*,
    789 F.2d 1158 *5th Cir. 1986 .................................................................. 18, 22

*Callanan v. Runyun*,
    75 F.3d 1293, 1297-98 (8th Cir. 1996) ............................................................ 7

*Chao v. Westside Drywall, Inc.*,
    2010 WL 1727288 (D. Or., April 28, 2010) ............................................... 5, 19, 20

*Connell v. Bank of Boston*,
    924 F.2d 1169, 1177-78 (1st Cir.) *cert. denied*, 501 U.S. 1218 (1991) ..................... 7

*Desimonte v. Allstate ins. Co.*,
    2000 WL 1811385 (N.D. Cal., Nov. 7, 2000) ..................................................... 11

*Dole v. Elliott Travel & Tours, Inc.*,
    942 F.2d 962 (6th Cir. 1991) ...................................................................... 3

*Donovan v. Grim Hotel Company*,
    747 F.2d 966 (5th Cir. 1984) .................................................................. 4, 21

*EEOC v. No. Knox Sch. Corp.*,
    154 F.3d 744, 748 (7th Cir. 1998) ......................................................... 10, 11, 12, 18

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - ii

*Harrison v. Greyvan Lines, Inc.*,
    331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed 1757 (1947)............................................................9, 22

*Herman v. RSR Security Services Ltd.*,
    172 F.3d 132 (2nd Cir. 1999)................................................................................passim

*Hermann v. Mid-Atlantic Installation Srvc.*,
    164 F. Supp. 2d 667, 670 (D. Md. 2000)............................................................14

*Jones v. Seko Messenger, Inc.*,
    955 F.Supp. 931 (N.D. Ill. 1997)....................................................................18, 22

*Lambert v. Ackerley*,
    180 F.3d 997, 1011-12 (9th Cir. 1999)..................................................................1

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577, 585 (6th Cir. 1992).........................................................................7

*Nichols v. All Points Transport Corp. of Mich., Inc.*,
    364 F.Supp.2d 621, 633-35 (E.D. Mich. 2005)..........................................9, 19, 20

*Norberg v. Tillamook County Creamery Ass'n*,
    74 F.Supp.2d 1002 (D.Or. 1999)....................................................................18, 22

*Ochoa v. J.B. Martin & Sons Farms, Inc.*,
    287 F.3d 1182, 1191 (9th Cir. 2002)...................................................................18

*Orr v. Bank of America, NT & SA*,
    285 F.3d 764, 774 (9th Cir. 2002).........................................................................5

*Ost v. West Suburban Travelers Limousine, Inc.*,
    1995 WL 330911 (N.D. Ill. 1995)..................................................................18, 22

*Pfingston v. Ronan Engineering Co.*,
    284 F.3d 999, 1003 (9th Cir. 2002).......................................................................6

*Pineda-Marin v. Classic Painting Inc.*,
    No. CV-08-798-HU, 2010 WL 1257616, *10 & 21 (D. Or., March 25, 2010)....................1, 9

*Ruiz v. Affinity Logistics Corp.*,
    -- F.Supp.2d --, 2010 WL 1038226 (S.D. Cal., March 22, 2010).........................................11

*Smith v. Dutra Trucking Co.*,
    410 F. Supp. 513, 516-17 (N.D.Cal. 1976), *aff'd,* 580 F.2d 1054 (9th Cir. 1978).......17, 18, 22

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - iii

## OTHER AUTHORITIES

Fed. R. Civ. P. 802 ................................................................................................ 6

Fed. R. Evid. 103(a)(1) ......................................................................................... 6

Fed. R. Evid. 602 .................................................................................................. 6

Fed. R. Evid. 801 and 802 .................................................................................... 6

Fed. R. Evid. 801(c) .............................................................................................. 6

FRCP 56(e) and 30(f)(1) ....................................................................................... 5

FRE 901(b) ............................................................................................................ 5

Local Rule 56-1 ..................................................................................................... 9

Local Rule 56-1(b) ................................................................................................ 8

Local Rule 56-1(c) ................................................................................................ 8

Local Rule 56-1(d) ................................................................................................ 8

Local Rule 56-1(g) ................................................................................................ 6

LR 56.1(b)-(d) ....................................................................................................... 5

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - iv

**I.    The Department Cannot Meet Its Burden Of Proving Messrs. Wasik And Hendrickson Are "Employers" Under The FLSA.**

The Department bears the burden of proving that Messrs. Wasik and Hendrickson are "employers" under the FLSA. *Pineda-Marin v. Classic Painting Inc.*, No. CV-08-798-HU, 2010 WL 1257616, *10 & 21 (D. Or., March 25, 2010). The Department has not met its burden, and summary judgment for individual defendants Messrs. Wasik and Hendrickson is therefore appropriate. *Id.*

First, it is the Department who has misstated the test by suggesting – contrary to Ninth Circuit authority – that corporate officers are subject to a different test than other individuals under the FLSA. On the contrary, the Ninth Circuit unequivocally applies the general "economic realities" test to determine the individual liability of a corporate officer. *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999). Specifically, the corporate officer (like any individual) must exercise "control over the nature and structure of the ***employment relationship***," or "economic control" over the employment relationship. *Boucher v. Shaw*, 572 F.3d 1087, 1091-92 (9th Cir. 2009) (emphasis added and citing *Lambert*, 180 F.3d at 1012). To determine whether any individual has the requisite control over the employment relationship to be deemed an "employer," the Ninth Circuit looks at the whether the individual:    (1) has a significant ownership interest with "operational control" of significant aspects of the company's day-to-day functions (e.g., supervises and controls employee work schedules or conditions of employment); (2) has the power to hire and fire the employees; (3) has the power to determine salaries (i.e., determines the rate and method of payment); and (4) maintains employment records. *Pineda-Marin*, 2010 WL 1257616 at *9 (citing *Boucher*, 572 F.3d at 1091-92, *Lambert*, 180 F.3d at 1012 and *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). The Court looks at the totality of the circumstances. *Boucher*, 572 F.3d at 1091; *Pineda-Marin*, 2010 WL 1257616 at *9. In other words, no one factor is determinative. *Id.*

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1

Second, instead of looking at the totality of circumstances for Messrs. Wasik and Hendrickson, the Department cherry-picks the fact that they were both corporate officers with some personal investment in the company, the fact that they had general control over the general operations of the company, and the fact that Mr. Wasik and Mr. Hendrickson may have hired and/or supervised other high-level executives, who in turn hired other managers, who in turn may have hired and/or supervised the City Managers or Area Managers, who in turn handled independent contractors. While similar facts – *when combined with other more salient facts* – may have resulted in individual liability in other cases, they do not do so here. Specifically, the Department cites again to extra-jurisdictional cases[1] that are clearly distinguishable on their facts.

For example, in *Herman v. RSR Security Services Ltd.*, 172 F.3d 132 (2nd Cir. 1999)**,** the Second Circuit relied, not only on the fact that the corporation's 50% shareholder and chairman of the board *directly* hired the management staff responsible for employee relations, but also on the salient facts that he, *inter alia*: (1) referred potential employees to the company; (2) gave some employees their assignments; (3) sometimes set rates for employee services; (4) gave instructions about employee operations; (5) forwarded complaints about employees; (6) resolved at least one complaint about a work-related problem involving an employee; (7) instructed management to review and revise employment application forms; (8) signed payroll checks on at least three occasions; and (9) established a payment system for clients. *Id.* at 136-137, 139-140. The Department's attempt to cherry pick one factor from this laundry list as determinative is unpersuasive and meritless. Unlike the corporate owner in *RSR Security Services* who owned 50% of the company, Messrs. Wasik and Hendrickson owned less than 1% of stock – and not in

---

[1] Defendants discussed and distinguished all of the extra-jurisdictional cases cited by the Department on the issue of individual liability in their Opposition to Plaintiff's Motion for Partial Summary Judgment; rather than repeat all of that discussion here, Defendants incorporate by reference herein Defendants' discussion of the Department's extra-judicial cases and analysis, as discussed in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, Docket No. 62.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

Velocity Express – but rather in the corporate parent. And more importantly, unlike the corporate owner in *RSR Security Services*, Messrs. Wasik and Hendrickson *did not* directly hire any of the City Managers or Area Managers who handled independent contractors, nor were they involved in any way with independent contractor referrals, assignments or instructions, setting rates, handling complaints or signing payroll checks.

Similarly, in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991), the Sixth Circuit found individual liability even though the corporate officer did not have "exclusive control" of the corporation's day-to-day functions, because the corporate officer *did have control over significant aspects of the day-to-day functions* such as: (1) the amount of employee salaries; and (2) the method of payment of those salaries. *Id*. at 966. Moreover, *the corporate officer had actual knowledge that the company's overtime practices violated the FLSA, yet he refused to comply. Id.* Again, the Department's failure to evaluate *Elliot Travel*'s holding in light of the totality of the circumstances involved is fatal. Unlike the corporate officer in *Elliot Travel*, *Messrs. Wasik and Hendrickson exercised no control over any aspects of the day-to-day functions in the Oregon facility,* such as independent contractor rates, payments, other details of contract negotiations, or daily operations. All of those allegations by the Department pertain to Area Manager Chad Mace or City Manager Nicole Dent – for example, allegations that Area Manager Chad Mace gave specific instructions to the contractors to sort packages, showed them how to sort, had requirements about calling dispatch, or reprimanded one driver. None of those allegations pertain to Messrs. Wasik or Hendrickson, nor has the Department established any evidentiary link between those allegations, which pertain to Mr. Mace or Ms. Dent, and Messrs. Wasik or Hendrickson. *Indeed, the Department's own witness – Darrell Graham – admits: "Area Manager Chad Mace had the final say with respect to my work at Velocity."* Graham Decl. at Docket 60-6, p.2 ¶ 5. There is absolutely no evidence that Messrs. Wasik or Hendrickson instructed Mr. Mace or Ms. Dent to operate the business on a day-to-day basis in such an alleged manner. Finally, it is undisputed that Messrs. Wasik and Hendrickson had no

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

involvement in the conversion of Oregon delivery drivers from employees to independent contractors – which was completed before they joined Velocity Express – and had **no reason to doubt that Velocity Express' independent contractor program fully complied with the law.**

Further, in *Donovan v. Grim Hotel Company*, 747 F.2d 966 (5th Cir. 1984), the Fifth Circuit relied not only on the fact that the president "held the purse-strings and guided [the companies'] policies," but also on evidence of the president's "ultimate control over wages" and his **hands-on management** of the hotels. *Id.* at 972 & n.7. There is no such evidence here as to Messrs. Hendrickson and Wasik.

In looking at the totality of circumstances here, Messrs. Wasik and Hendrickson did not have the requisite control over the employment (or independent contractor) relationship with the specific drivers in Oregon to be deemed an "employer" under the FLSA. Velocity Express's conversion to using independent contractors was completed in Oregon by Velocity's predecessor management long before Messrs. Wasik and Hendrickson were ever hired. Messrs. Wasik and Hendrickson had no role in drafting the independent contractor contracts or specifying the terms of those contracts. They had no control over any of the significant aspects of the company's day-to-day functions including (but not limited to) the Portland, Oregon facility. They were not involved in contracting with the delivery drivers and had no influence over the delivery drivers' "work schedules" or "conditions of employment." They did not exercise the power to hire or fire delivery drivers (and could not, in fact, even name any Oregon delivery drivers). They did not negotiate rates with the delivery drivers, determine their rates of compensation, or handle the method of payment. Nor did they exercise any day-to-day supervisory control over Mr. Mace or Ms. Dent – the individuals whom the Department alleges exercised "control" over the delivery drivers. appear to bear the brunt of the Department's allegations. And, finally, Messrs. Wasik and Hendrickson did not maintain any records regarding independent contractors' settlements or pay, or any records about them period.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

As the undisputed facts demonstrate, Messrs. Wasik and Hendrickson were not employers under the FLSA, and the Court should grant Defendants' motion for summary judgment and dismiss the Department's claims against these individual defendants.

## II.     The Department's Evidence That Is Not Properly Authenticated, Not Based On Personal Knowledge, And That Does Not Comply With LR 56.1(b)-(d) Should Be Stricken And Not Considered By The Court.

### A.     The Department's Improperly Submitted Deposition Testimony Should Be Stricken.

The Department's Response to Defendants' Concise Statement of Material Facts relies in large part on deposition testimony from witnesses Nicole Dent, Chad Mace, Kay Durbin, and Jim Lindvall. The Department, however, failed to properly authenticate these transcripts; they must be stricken from the record and not considered by the Court:

> When offered at summary judgment, deposition excerpts must identify the names of the deponent and the action and *must include the reporter's certification that the deposition is a true record of the testimony of the deponent*. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (*citing* FRE 901(b); FRCP 56(e) and 30(f)(1)). The affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a "true and accurate copy" is not a sufficient substitute, without more, to satisfy the authentication requirement; "such an affidavit lacks foundation even if the affiant-counsel were present at the deposition." *Id.* (citing *Beyene v. Coleman Security Servs.*, 854 F.2d 1179, 1182 (9th Cir. 1988)). Once a document is properly authenticated by one party, the requirement of authenticity is satisfied with regard to all parties and the document may not be excluded on grounds of inadequate authentication when submitted by another party. *Id.* at 775-76.

*Chao v. Westside Drywall, Inc.*, 2010 WL 1727288 (D. Or., April 28, 2010) (citing *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) and *Beyene v. Coleman Security Servs.*, 854 F.2d 1179, 1182 (9th Cir. 1988)) (emphasis added). The Department's submissions of Nicole Dent's, Chad Mace's, Kay Durbin's, and Jim Lindvall's deposition transcripts have not been properly authenticated. Among other things, no court reporter certification was provided to authenticate the deposition transcript. *See Chao, Beyene, and Orr, supra.* Accordingly, any

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5

deposition testimony of these witnesses must be stricken from the record and not considered by the Court in deciding Defendants' Motion.[2]

**B.      The Declarations From the Department's Witnesses Should Be Stricken To The Extent They Fail To Comply With The Federal Rules Of Evidence.**

The declarations of the Department's witnesses Bruce Mummery, Adam Rose, Darrel Graham, and Jerold Barton should be stricken to the extent they fail to comply with the federal rules of evidence.[3] For example, a number of statements lack foundation and are not supported by any evidence of personal knowledge by the declarant. Defendants seek to exclude the testimony of any witness who does not have ***personal*** knowledge of "what happened" — a basic tenant of providing foundation for the entry of any testimony into the record. Fed. R. Evid. 602 (requiring witnesses to have personal knowledge of matters about which they testify).

In addition, the Department should be precluded from introducing inadmissible hearsay in opposition to Defendants' motion. *See* Fed. R. Evid. 801 and 802. Hearsay is an out-of-court statement – e.g. other than a statement made by the declarant while testifying in the hearing or at trial – offered into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Unless an exclusion applies, hearsay is inadmissible. Fed. R. Civ. P. 802.

By way of example, witness Jerold Barton claims that "two drivers that I know were not paid because the y could not afford the insurance." Barton Decl., Docket 60-6, ¶ 14. This statement fails to establish any personal knowledge for Mr. Barton's statement; moreover, it appears to be based on hearsay – an out of court statement by the two alleged drivers regarding

---

[2] The Department also submitted excerpts from the deposition testimony of Vincent Wasik, which the Department failed to authenticate. Since Mr. Wasik's deposition testimony was properly authenticated with the Court Reporter's certificate in Defendants' Motion (see Exhibit 1 to Anderson Decl., Docket 54-2), Defendants do not move for exclusion of Mr. Wasik's deposition testimony.

[3] Local Rule 56-1(g) provides that evidentiary objections should be included in the memorandum briefing and not in a separate motion to strike. An evidentiary objection in a response or reply memorandum may be supported by argument and should be stated concisely. *See Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1003 (9th Cir. 2002); Fed. R. Evid. 103(a)(1).

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6

whether or not they were paid or could afford insurance. Mr. Darrel Graham purports to testify that "I understood the dispatcher to report to Ms. Dent and/or Mr. Mace." Graham Decl., Docket 60-6, ¶ 5. Again, this statement lacks any supporting foundation or personal knowledge.

Likewise, evidence grounded only in personal beliefs and conjecture of witnesses, including co-workers, should be excluded. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); *Connell v. Bank of Boston*, 924 F.2d 1169, 1177-78 (1st Cir.) *cert. denied*, 501 U.S. 1218 (1991) (lay opinion – that employer was "determined to eliminate . . . senior employees" pointed to no specific facts sufficient to buttress such a "broad assertion"). Testimony which consists of "generalized, subjective assertions of perceived bias" are properly excluded. *Callanan v. Runyun,* 75 F.3d 1293, 1297-98 (8th Cir. 1996).

For example, a number of the witnesses appear to make conclusory allegations or speculative statements without sufficient foundation, such as "*Velocity required* me to call in to a dispatcher . . ." or "*Velocity required* me to obtain and wear a uniform" or "*Velocity* required me to display Velocity's sign." *See* Mummery Decl., Docket 60-4, at ¶¶ 12-16. Who is "Velocity" here? Is it Mr. Mace or Ms. Dent? And what is the basis for his personal belief that the requirement was coming from Velocity and not somewhere else, such as Velocity's customers? Significantly, there is no reference to such requirements (e.g. that uniforms *must* be worn) in the contracts with these drivers. Nor does the witness establish any personal knowledge for why he believed that "Velocity required" him to call a dispatcher, wear uniforms or display a sign. Even worse is the declaration of Darrell Graham. Graham Decl., Docket 60-6, ¶ 2. Using the passive voice throughout his declaration, Mr. Graham states: "I was simply expected to sign the renewal contract" – expected by whom? Did someone tell him this? If so, whom? Regardless, it is hearsay, and there no evidentiary basis for determining whether a hearsay exception applies. Similarly he states: "I was paid more for on demand work that *was assigned* to me" – assigned

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7

by whom? *Id.* ¶ *6.* And "I *was told* I was being hired for a specified route" – told by whom? *Id.* ¶ 8. All of these types of statements must be stricken as inadmissible hearsay or subjective statements based on personal belief and conjecture of the witnesses.

Finally, many statements are vague as to time period, so it is entirely unclear whether the alleged act took place during the time period relevant to the Department's claim, which begins in August 2007. Mr. Graham admits that he was employed by Velocity from 2006 to 2008. Graham Decl., Docket 60-6, ¶ 1. The 2006 to July 1007 time period is outside of the statute of limitations. Yet it is unclear in his declaration whether his allegations pertain to the statutory time period or before then. For example, in paragraph 2, he discusses signing a new contract with Velocity after his prior company was acquired in 2006. Even though he signed a new contract for a term of one year, followed by another new contract, both of those may have been signed before August 2007, and clearly at least one of them was signed in 2006.[4]

In Sum, the Department's declarations should be stricken to the extent they fail to comply with the Federal Rules of Evidence.

### C. The Department's Response to Concise Statement of Material Facts Fails to Comply With Local Rule 56-1(b)-(d).

Local Rule 56-1(d) provides that unless approved by the Court in advance, neither the Concise Statement nor any response or reply thereto, may be longer than five (5) pages, and statements in excess of that amount may be stricken by the Court. Local Rule 56-1(c) provides that facts listed in the Concise Statement must be stated in separately numbered paragraphs, and Local Rule 56-1(b) requires that the Department must respond to each numbered paragraph of Defendants' Concise Statement. Local Rule 56-1(b)-(d).

---

[4] See also Bruce Mummery, Adam Rose, and Jerrold Barton declarations, which simply state that they worked for Velocity Express in "late 2007." Nothing more specific is provided. At best, "late 2007," is vague and ambiguous as to time frame.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8

The Department's Response to Defendants' Concise Statement of Material Facts wholly fails to comply with Local Rule 56-1. It is 8 pages in length, not 5. Moreover, if the Department had complied with the Court's rule that each item must be responded to in a separately numbered paragraph, the Department's Concise Statement would have been substantially longer. On page 2, the Department responds to no fewer than 13 of Defendants' separately numbered paragraphs in one long text (see Department's ¶ 2, Docket 60, page 2 of 8, numbered 1 of 7 by the Department). The Department's Response to Defendants' Concise Statement of Material Facts should be stricken in accordance with Local Rule 56-1.

### III.    The Department Fails To Raise Genuine Issues Of Material Fact To Avoid Summary Judgment:  The Totality Of The Circumstances Demonstrates That The Delivery Drivers Are Independent Contractors Under The FLSA.

While the Department purports to raise issues of fact on the question of whether the delivery drivers are independent contractors, once again the Department cherry-picks alleged facts which it claims support its position.  Yet, as Ninth Circuit precedent recognizes, the question of whether an individual is an employee or independent contractor is based on the totality of the circumstances. *Boucher*, 572 F.3d at 1091; *Pineda-Marin*, 2010 WL 1257616 at *9.  No one factor controls. *Id.*  Here the totality of the factors and undisputed facts weigh in favor of independent contractor status.

### A.    Factor One:    Control Over the *Manner* In which the Work Is to Be Performed.

Courts have consistently found that the parties have an independent contractor relationship, ***even if the alleged employer exercises some control over the worker, when – as here – the areas of alleged control are required for the performance of the contracted services.*** *See, e.g., Velu*, 666 F.Supp.2d at 306; *Herman*, 161 F.3d at 303; *Silk*, 331 U.S. at 715; *Harrison v. Greyvan Lines, Inc.*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed 1757 (1947); *Nichols v. All Points*

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9

*Transport Corp. of Mich., Inc.*, 364 F.Supp.2d 621, 633-35 (E.D. Mich. 2005); *EEOC v. No. Knox Sch. Corp.*, 154 F.3d 744, 748 (7th Cir. 1998).

The Department argues that the contract for the drivers indicates a "high degree of control over their activities." The Department argues that the contract set out extensive rules regarding the conduct of the driver,[5] and that local managers had requirements such as a certain time to start routes, and so forth. Yet, these exact arguments were rejected by the court in *EEOC v. Knox Sch. Corp.*, 154 F.3d 744, 748 (7th Cir. 1998). As the 7th Circuit reasoned,

> ***As other examples of North Knox's "control" and "supervision," the EEOC cites to the detailed specifications in the transportation contracts, which set "the precise route and schedule of each driver."*** And the EEOC contends that North Knox "controls" the drivers because it "limits the number of times and permissible reasons a regular driver may be absent, requiring him to obtain a substitute driver from a list approved by the Board." Also North Knox requires the drivers to enforce its disciplinary policies but "restricts the disciplinary tools available to bus drivers and retains the ultimate authority to sanction pupil misconduct. The drivers are not free to set their own rules for appropriate behavior, and have little discretion to select or administer punishment." Surely the EEOC would not expect each driver under contract to have his or her own standards for discipline and punishment in order to be labeled independent. Again North Knox correctly responds that each of these "controls" is dictated by statute, so to that extent what we have said about the other state regulations applies with equal force. ***But we see a deeper flaw in the EEOC's argument. Certainly one can "control" the conduct of another contracting party by setting out in detail his obligations; this is nothing more than the freedom of contract. This sort of one-time "control" <u>is significantly different than the discretionary control an employer daily exercises over its employees' conduct.</u>*** An example of control set by contract would be a government entity contracting with an independent contractor to perform some service, such as building military equipment, and dictating the terms of the service to be performed with precision. That is, of course, the basis of the "government contractor defense." See Boyle v. United Technologies, Corp., 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (defense requires "reasonably precise" government specifications); Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 997-98 (7th Cir.1996). ***The precise specifications do not make the contractor an employee of the government.*** Of

---

[5] The Department does not put forth any credible evidence to raise an issue of material fact or contradict the testimony of Ms. Durbin or Ms. Dent that a number of the items in the contracts are in fact required by Velocity's customers, such as having available a uniform or signage for the vehicle, or conducting background screening on drivers for safety reasons. While the contract required the purchase of a uniform and signage, it is undisputed that the requirement was included in the contracts by Velocity because it came from the customers. It is also unrefuted that the drivers were free to not wear the uniforms or use the signage if the customers did not require it. *See Durbin* and *Dent Decls.*

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10

course an employment contract may also precisely set out the obligations of the parties, so we do not suggest that precise contractual obligations necessarily show that the hired party is an independent contractor. But they certainly do not, as the EEOC suggests, necessarily show he is an employee. *There is nothing significant, for example, in North Knox requiring as a term of the contract that a driver begin his route at a certain time. This permits the parents and children to know when the bus will arrive at each stop and ensures that the children will arrive at school on time. If North Knox failed to specify this term and similar ones, the transportation contracts would be less valuable to it.*

*EEOC v. No. Knox Sch. Corp.*, 154 F.3d 744, 748-49 (7th Cir. 1998) (emphasis added). Here, the Department has failed to raise any evidence to refute Defendants' evidence that the requirements in the contract were either dictated by law (e.g. driver must have valid drivers' license) or to meet customer requirements. *Knox* recognized that listing detailed contractual requirements, some *but not all of which* were required by law, is not inconsistent with independent contractor status. By way of example, *Knox* noted that setting forth detailed terms for services to be provided by a military contractor in building military equipment would not render the government contractor an "employee." *Id.*

Likewise, other cases have recognized that "control" over a worker does not invade the workers' independent contractor status when – as here – the contractor's obligations are in fact required either by law or regulation, or mandated by the customer. *Knox, supra; See, e.g., Velu*, 666 F.Supp.2d at 306; *Herman*, 161 F.3d at 303; *Ruiz v. Affinity Logistics Corp.*, -- F.Supp.2d --, 2010 WL 1038226 (S.D. Cal., March 22, 2010); *Desimonte v. Allstate ins. Co.*, 2000 WL 1811385 (N.D. Cal., Nov. 7, 2000) (training meetings did not transform independent contractor relationship into one of employer-employee because training meetings were required by the Department of Insurance to ensure compliance with state and federal law).

The Department further argues that failure to adhere to conduct standards is a basis for termination of the driver's contract; yet, this same argument was rejected in *Knox*: "The power to terminate a contract for material breach is a general right of all contracting parties, *see, e.g., American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 599 (7th Cir. 1986) ("If you commit a material breach of contract, the other party can walk away without

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11

liability.")." *Knox*, 154 F.3d at 749. The Knox court also rejected two other arguments raised by the Department here. Both the EEOC in *Knox* and the Department here, argue that the company supervises and disciplines drivers by monitoring their performance and taking it into account when deciding whether to enter into a new contract with an incumbent driver. As the *Knox* court stated: "But this in no way distinguishes these drivers from any independent contractor. It would be odd for someone not to take past performance into account when deciding whether to enter into a new contract."

> 1.    ***Control Over Routes and Schedules, Supervision, and Rates of Pay.***

The Department does not attempt to refute that delivery drivers were free to organize the internal structure of their routes. Instead, the Department argues here – as did the EEOC in *Knox* – that under the contract's terms, Defendants retained the right to unilaterally provide the "when and how" Velocity requested drivers' services. But this argument, too, was rejected in *Knox,* which noted that changes in routes or size of vehicles could easily lead to canceling the existing contract and renegotiating a new one. Retaining the right to change routes, compensation, or cancel contracts "shows nothing more than that the two contracting parties" "expected some changes in circumstances and adequately provided for them in the contract." *Id.*

Further, it is undisputed that the Velocity contract provided: "All other matters relating to the pick-up, transport and/or delivery of items . . . shall be ***in the control of and at the discretion of the Contractor.***" *See* Dent Decl. Ex. 2, ¶ 3 ("Contractor's Control of Services Provided"). This discretion was more than just words on a page. The Department cannot refute that the drivers controlled: the order in which they made their deliveries (e.g. a driver could elect to accept an on-demand delivery and do that before a particular customer's regular pickup/drop off, or complete the on-demand delivery afterwards); the priority given to pick-ups and deliveries in relation to other pick-ups and deliveries (some deliveries were time sensitive based on customer's needs; others were not, and the driver was free to organize as he/she saw fit); and the path or line of travel the driver took in order to complete his/her deliveries. It is also undisputed

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - 12

– even by the Department's witnesses – that drivers were free to turn down "on demand" work. Indeed, the Department's witness, Mr. Graham, admitted that he was "offered other deliveries," and "given the opportunity to accept or decline these new deliveries." Graham Decl., Docket 60-6, ¶ 8. The delivery drivers were also free to run personal errands during their day. In addition, drivers could hire helpers or employees to service their route or routes, in whole or in part, if they chose.

The Department argues that Velocity controlled the drivers' schedules. Yet, the Department provides no evidence to refute Defendants' evidence that stop locations, delivery times, and so forth were all customer driven, and that – as noted above, drivers were free to organize their schedules as they saw fit to meet their customers' needs. The Department also does not refute Defendants' evidence that drivers were free to – and did – turn down routes and on demand work. *See* Dent Decl. Other drivers, such as Don Scherer, elected to pick up additional routes, but that was entirely his choice. And while the Department's witnesses make vague statements such as "Velocity provided me with a route sheet showing the stops," this fails to refute or contradict testimony from Velocity's witnesses that the drivers were free to make up their own route sheets and edit their route sheets, and in fact a number of them did both. See Dent Decl. and Exs. 3 and 4 (showing examples of driver route sheets edited by the drivers, changing the times, locations, and orders of their routes). Again, the Department does not refute that drivers' were free to turn down additional "on-demand" deliveries.

The Department claims that drivers were supervised because they were required to update dispatchers. This is simply a method for keeping in contact with the contractors and having information to answer customers' questions, or offer on-demand deliveries when they would arise. See Dent Decl. The Department also argues that some drivers were instructed to sort packages and some were shown by a company representative how to sort packages or use a

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 13

scanner. Significantly, the witnesses do not allege this supervision occurred on a daily basis.[6] Even if true, requiring sorting of packages as one of the requirements under the contract does not make a driver an employee. Rather, as in *Hermann v. Mid-Atlantic Installation Srvc.,* 164 F. Supp. 2d 667, 670 (D. Md. 2000), these activities were required to fulfill the service – in *Hermann,* if the cable installer failed to follow protocol, the installation itself might fail, or otherwise cause damage to the cable customer's property. Here, sorting packages so that the driver could get his or her truck loaded and the deliveries accomplished without damage to the packages is activity required to fulfill the service to the customer – and the contractual duties of the driver. *See Hermann,* 164 F. Supp. 2d. at 670.[7]

Finally, the Department argues that drivers did not have control over their rates of pay. The sole support for this allegation based on statements by the Department's witnesses such as Mr. Rose who stated: "I did not negotiate my rate of pay." The fact that Mr. Rose (or the Department's other witnesses) did not attempt to make a counteroffer or negotiate, and simply accepted the first offer from Velocity, simply means that he was a poor negotiator. It does not refute the uncontroverted evidence from Defendants' witnesses who stated that they did in fact negotiate their rates, and went back and renegotiated when circumstances changed.

---

[6] Similarly, Adam Rose claims that on one occasion he was verbally reprimanded for failing to make a scheduled delivery. This hardly constitutes regular "day-to-day" supervision and control. At a minimum, such examples are sporadic at best, and only one of the multiple factors to be considered under the "totality of the circumstances" analysis.

[7] Likewise, the *Hermann* court noted that requiring the cable installer to wear a uniform and ID badge were other activities required to fulfill the service – if the cable installer failed to wear the uniform and ID badge, customers might not let him or her into their home to install cable. 164 F. Supp. 2d at 667-70. Here, it is undisputed that the requirement by Velocity Express under the contract for drivers to purchase a uniform and signage was to have a uniform and sign available to use *if required by the customer*. Durbin, Dent Decls. *supra.* As in *Hermann*, these items were required under the contract so that the drivers could fulfill the service. For example, it would not be surprising that one of Velocity's customers, a supplier of medical equipment, would want a contractor to wear a uniform and have an ID badge or signage before requesting the driver to pick up and return medical equipment from the home of an elderly customer who had rented an oxygen tank or wheelchair from the equipment supplier. Without such identification, it would be reasonable for the customer to refuse to open the door, and the delivery could not be completed.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 14

**B.** **Factors Two and Three:  Drivers Had Opportunity for Profit and Loss and Made Investment In Their Business, with Opportunity To Hire Helpers.**

*1.* *Drivers Had Opportunities for Entrepreneurial Activities.*

The Department claims that drivers did not have opportunity for entrepreneurial activities apparently because some of the drivers bid on long routes and claimed they did not have time for other activities.  Even if true, those drivers chose to bid on those particular routes, and could have declined to bid, asked for other route opportunities, or come back later and asked to re-engineer their route.  The declarations provided by Defendants' witnesses establish that drivers did indeed work for other companies, and make a voluntary decision whether or not to bid on additional routes.  Indeed, Mr. Don Scherer – one of the drivers who worked the longest hours and routes – admits that he voluntarily elected to take on additional routes with Velocity as well as on-demand work, and that he also elected to work as a driver for another company.  Another witness Matt McQuown also performed deliveries for both Velocity Express and another company.  Mr. McQuown was originally listed on the Department's Exhibit A, but (cherry-picking again) the Department dropped him at the eleventh hour – apparently, once the Department realized his testimony did not help its case.  Regardless, Mr. McQuown was a contract driver for Velocity, and his testimony establishes that he was provided the opportunity for and did engage in entrepreneurial activity, including contracting for other companies.  Finally, Defendants witnesses establish – as in *Express Sixty Minutes* – that drivers did have the choice to reject on-demand work, as also admitted by the Department's own witness Daryl Graham.  *See* 161 F.3d at 303.

*2.* *Drivers Had Opportunities for Profit and Loss, with Attendant Opportunities for Investment in Their Business.*

The Department skims over or ignores a number of facts which support the conclusion that the contractors had the opportunity for profit and loss.  These same factors also show that the

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 15

contractors had opportunities to run – and invest in – their own business, including opportunities to hire helpers or substitute workers. The following facts are undisputed:

- Contractors provided their own vehicles to perform delivery services. The were free to use – and did use – their own vehicles, or could lease a vehicle, whichever was more cost effective for them.

- Contractors were free to use their vehicles at any time – before, during or after their deliveries, as well as on weekends, for personal reasons.

- Contractors paid their own costs related to the vehicle: vehicle purchase or lease payments, regular vehicle maintenance costs, parking fees, and cell phones.[8]

- While a few contracts required additional equipment such as scanners, the contractors paid the cost under their contracts.

- Contractors were free to employee a substitute driver and could employ a substitute driver to perform all or part of the services under the contract.

- Contractors were required to obtain their own insurance, including commercial cargo insurance, commercial vehicle insurance, and occupational accident insurance. It is undisputed that the majority of Oregon contractors located and purchased their own insurance outside of any optional third-party vendor through Velocity Express.

- Contractors were responsible for paying and did pay their own taxes and social security. All of the contractors in Oregon, with one exception, elected not to use the optional escrow service through a third-party accounting service. Velocity Express did not pay any employer portion of social security – FICA or FUTA.

---

[8] The Department argues Velocity paid for a refund for gas costs. This is incorrect, as it was not a reimbursement for the actual full cost of fuel. Rather, when fuel costs skyrocketed in 2009, Velocity provided an increase in settlement pay to account for the incremental market increases in fuel costs. This did not cover all cost of fuel.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 16

- Contractors were responsible for their own medical insurance. None of the Oregon contractors purchased insurance through the optional program from a third-party provider.

- Contractors had the option for a weekly settlement check versus 45-day schedule, which had reduced administrative costs.

All of these are hallmarks of independent contractor status. Each of these provided opportunities for the contractors to control their costs, with opportunities for either profit or loss. Indeed, the fact that the contractors own their own equipment and vehicles weighs strongly in favor of finding a independent contractor affiliation. *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1293 (9th Cir. 1999) (noting also that by contrast, payment *by the company* of "social security taxes[,] . . . retirement, health care, workers' compensation, [and] vacation benefits . . . are usually associated with employment . . ."); *Smith v. Dutra Trucking Co.,* 410 F. Supp. 513, 516-17 (N.D.Cal. 1976), *aff'd,* 580 F.2d 1054 (9th Cir. 1978) (finding minimal control when subhaulers for trucking company own their own equipment and pay their own costs).

All of the above undisputed facts are also the indicia of a business person who is running his or her own business, again with opportunity for investment in the business, and with opportunity for employment of helpers or substitute workers. The Department claims that Velocity had "complete control" over whom the delivery drivers could hire to help them complete their routes. Here, the Department is referring to the fact that the Velocity contract required substitutes to go through a background check screen. This is a red herring. Substitutes were required to go through the background check and screening process that was required of all contractors; it is undisputed that this was required both to meet legal requirements (e.g. has a valid driver's license) as well as background checks required by customers for safety reasons. See Durbin Decl. Any substitute could be hired as long he or she completed a background check. Thus, while substitutes did have to complete a background check, the fact is that drivers did obtain substitutes, and there is absolutely no evidence in the record of a proposed substitute

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - 17

ever failing to pass the background screen or Velocity refusing to allow the contractor to hire a substitute. Drivers also asked other contractors to substitute for them. Thus, the statement that contractors "could not realistically work for another employer" belies the fact that the contractors were free to hire a substitute or subcontract their routes.

### C.      Factor Four:  Special Skills or Licensing.

A fact finder is more likely to classify someone as an independent contractor when the work involved requires specialized or other such skills. *Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182, 1191 (9th Cir. 2002). But while the delivery drivers at issue did not have to have "special licensing," this fact alone does not answer the question on this factor. Professional drivers in general "could be either employees or independent contractors." *Knox,* 154 F.3d at 749 (bus drivers found to be ICs). ***Indeed, numerous courts have found a commercial driver to be an independent contractor.*** *See., e.g. Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158 *5th Cir. 1986) (truck driver found to be I.C.); *Norberg v. Tillamook County Creamery Ass'n,* 74 F.Supp.2d 1002 (D. Or. 1999) (truck driver found to be I.C.); *Smith v. Dutra Trucking Co.,* 410 F.Supp. 513, 516-17 (N.D.Cal. 1976), *aff'd,* 580 F.2d 1054 (9th Cir. 1978) (truck driver found to be I.C.); *Jones v. Seko Messenger, Inc.,* 955 F.Supp. 931 (N.D. Ill. 1997) (messenger service driver found to be I.C.); *Ost v. West Suburban Travelers Limousine, Inc.,* 1995 WL 330911 (N.D. Ill. 1995) (limousine driver found to be I.C.). Thus, this factor, at worst is neutral, or slightly favors a finding that the drivers here are independent contractors.

### D.      The Contract Delivery Drivers Did Not Have a Permanent Relationship With Velocity Express.

Factor five - the "degree of permanence" factor – also compels the conclusion that the delivery drivers here were independent contractors. Contrary to the Department's suggestion, in analyzing this factor courts consider more than just the length of time the individual performed work for the alleged employer. Courts also examine other facts indicative of whether the individual and the alleged employer have contemplated a "permanent" relationship. *See, e.g.,*

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 18

*Chao*, 2010 WL 1727288 at *20; *Herman*, 161 F.3d at 305; *Bonnetts,* 7 F.Supp.2d at 981. *See also Velu*, 666 F.Supp. at 307 (considering ability to work for other companies and concluding worker was an independent contractor). For example, in *Chao*, the court considered whether the relationship between the parties was "at will," whether the workers performed multiple projects at one time, and whether the workers solicited work from other companies during "down times." *Chao*, 2010 WL 1727288 at *20. The Court concluded that, on balance, these facts supported the conclusion that the workers were independent contractors.

Similarly, in *Herman*, the court considered not only how long – on average – the drivers performed work for the alleged employer, but also the fact that the drivers were able to perform work for other companies and that the contractor agreement did not contain a non-compete covenant. *Herman*, 161 F.3d at 305. Based on these facts, the court concluded, "The permanency factor points toward independent contractor status." *Id.*

In *Bonnetts*, the court examined the express terms of the contract between the parties and did not even consider the length of time the truck driver had actually performed work for the alleged employer (approximately 2 years). *Bonnetts,* 7 F.Supp.2d at 981. In analyzing the contract, the court looked to the length of the contract term and the means by which the contract could be extended or terminated. *Id.* Although the contract provided for an "at-will" employment relationship, the court nevertheless found that the relationship "was not one of a permanent nature," because the contract was terminable at any time. *Id.* The court accordingly concluded the permanence factor was "indicative of an independent contractor relationship." *Id. See also Nichols v. All Points Transport Corp. of Mich., Inc.*, 364 F.Supp.2d 621, 631 (E.D. Mich. 2005) (analyzing "permanence" based on terms in contract and concluding, "the factor weighs in favor of finding that the  truck drivers were independent contractors.") Like in *Chao, Herman, Bonnetts* and *Nichols*, the undisputed facts here weigh in favor of concluding that the delivery drivers are independent contractors.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 19

Here, in fact, the length of time worked by the delivery drivers supports an independent contractor relationship. While the Department attempts to claim that "many of the drivers" "worked for Defendants for years," that is an overstatement. *Of the thirty-one* drivers who had contracted with Velocity Express during the time period relevant to this lawsuit, *twenty-four* performed work for Velocity Express for three years or fewer. *See* Dent Decl. Ex. 1. Notably, as of July 27, 2009 (the day the Department filed this lawsuit) *nineteen no longer contracted with Velocity Express*, period. *Id. Of those nineteen drivers, eleven had contracted with Velocity Express for 8 months or fewer. Id.* Only one had worked with Velocity Express for more than 4.5 years. *Id.*

Only twelve of the drivers at issue in this lawsuit contracted with Velocity Express for some period between July 27, 2009 and November 2009. *Id.* Seven of these drivers had worked with Velocity Express for six or more years. *Id.* One, Michael McQuown, contracted with Velocity Express "off and on," for approximately six years. McQuown Decl. ¶ 1. Five had worked for Velocity Express for fewer than three years. *See* Dent. Decl. Ex. 1. The length of these drivers' relationships with Velocity Express are entirely consistent with the longevity of the workers at issue in *Chao* ("several years"), *Bonnetts* (two years), *Nichols* (4 years) and *Velu* (over 10 years) who were found to be independent contractors. *Chao*, 2010 WL 1727288 at *20; *Bonnetts*, 7 F.Supp.2d at 981; *Nichols*, 364 F. Supp. 2d at 623; *Velu*, 666 F.Supp. at 303.

Second, the delivery drivers' relationship with Velocity Express was not "one of permanence." Like in *Bonnetts* and *Nichols*, the parties here could terminate their contractual relationship at any time. *See* Dent Decl. Ex. 1. Third, as discussed in *Chao* and *Herman*, the delivery drivers here were free to solicit or accept work from other companies while performing work for Velocity Express – ***and many did so***. In addition, as in *Herman*, the independent contractor agreement signed by the drivers here did not contain a non-compete clause. And contrary to the Department's claim that some drivers "were unable to work for any other employer because their work for Defendants consumed all of their available time," the

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 20

Department conveniently ignores the fact that these drivers could easily have subcontracted part of their route, either if they wanted to personally work less, or expand and add additional routes, with other helpers.

Finally, the delivery drivers here are not dependent on Velocity Express for their continued "employment." *See Donovan*, 656 F.2d at 1372 (finding the "permanency" factor weighed in favor of employee status because the workers were dependent on Sureway for continued employment). Unlike the workers in *Donovan*, the delivery drivers here had more than simply their labor to transfer to another business opportunity. The drivers had their vehicles, licenses, helpers, insurance, cellular phones, and any other equipment needed to make deliveries, to transfer with them. Thus, as the court in *Velu* stated – indeed, about Velocity Express deliver drivers – "[i]f either party were to terminate the Agreement today, [the drivers] could go out the next day with the same van, clothes, equipment, computer, printer and other supplies and immediately work for another shipping company." *Velu*, 666 F.Supp.2d at 307. This is the very picture of an independent contractor relationship.[9]

### E.     The Integration Factor Does Not Support the Department's Position.

The Department argues that because deliveries were integral to Defendants' business, this factor weighs in favor of "employee" status. Regardless, in the context of transport and delivery services, courts have repeatedly found that while driving and delivery are integral to the

---

[9] The Department's attempt to distinguish *Velu* is without merit. *Velu* involved the very same company – Velocity Express, and raised claims not only under state law but also the FLSA. While the Department claims that Defendants have not established that delivery drivers could, in fact, work for other employers, that simply is not true. The un-refuted declarations of Don Scherer and Matt McQuown establish that they have indeed performed services for other companies at the same time as for Velocity Express. As noted elsewhere in this brief, drivers were free to not bid on or turn down routes, or subcontract part or all of their routes to other helpers. Finally, the Department claims that the drivers could not have quit working and transferred their tools and equipment to another employer because Velocity owned their uniforms and scanners. This claim is ludicrous. Why would a driver want or need to wear a Velocity uniform for another company? Clearly a driver performing deliveries for a competitor would not hold him or herself out as a contractor for Velocity. And only a few of the jobs required scanners. There is absolutely no evidence in the record that scanners were required in the industry for all delivery drivers to work as contractors.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 21

business, the drivers are just as likely to be independent contractors as they are to be employees. *See., e.g. Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, (5th Cir. 1986) (truck driver found to be I.C.); *Norberg v. Tillamook County Creamery Ass'n,* 74 F.Supp.2d 1002 (D. Or. 1999) (truck driver found to be I.C.); *Smith v. Dutra Trucking Co.,* 410 F.Supp. 513, 516-17 (N.D.Cal. 1976), *aff'd,* 580 F.2d 1054 (9th Cir. 1978) (truck driver found to be I.C.); *Jones v. Seko Messenger, Inc.,* 955 F.Supp. 931 (N.D. Ill. 1997) (messenger service driver found to be I.C.); *Ost v. West Suburban Travelers Limousine, Inc.,* 1995 WL 330911 (N.D. Ill. 1995) (limousine driver found to be I.C.).

Moreover, even when the individual's work is an integral part of the alleged employer's business, this factor can nevertheless indicate an independent contractor relationship when the individual's work is interchangeable with the work of others. *Velu,* 666 F.Supp.2d at 307. In this case, the drivers were fungible, a fact apparently admitted by the Department. The Department cannot dispute that Velocity Express supplied the delivery drivers with a contact list of other Velocity Express independent contractors, to use in case a driver needed a substitute. The Department also cannot dispute that drivers have given up their routes – or partial routes – to other Velocity Express independent contractors. Accordingly, this factor tips toward finding an independent contractor relationship here.

Even if the Court were to determine that this factor is neutral or even favors the Department, this factor alone is insufficient to tip the balance. *See, e.g., Herman,* 161 F.3d at 305 (factor insufficient to tip the balance given the weight of the other factors in support of independent contractor classification). Here, factors one, two, three, and five – with support from factor four – compel the conclusion that the drivers were correctly classified as independent contractors. *See, e.g., Herman,* 161 F.3d at 305; *Bonnets,* 7 F.Supp. at 982 - 983; *Silk,* 331 U.S. at 713; *Harrison,* 331 U.S. at 704.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 22

**F.      The Drivers Were Not Officially Organized Into "Units"; Rather They Were Independent Businesses.**

The Department's argument here again misses the mark, as the contractors have all of the indicia of independent businesses.  The cases cited by the Department are inapposite – they are not an "in house" unit, cucumber workers picked from a pool, or unionized baggage handlers. Rather, they are individual drivers who entered into contracts to provide services for Velocity. They provide their own vehicles, pay their own maintenance costs,  parking, all insurance costs, tax services, medical costs, and so forth.  A number work for or have worked as contractors for other companies, and others have or could have subcontracted their routes if they had wanted to expand their business.  The undisputed evidence from Ms. Durbin is that contractors have expanded their business to become fleet contractors, where they own more than one vehicle and service multiple routes.

**G.      The Drivers Were Not Treated Like "Employees."**

The Department attempts to argue that the drivers were treated "like other employees" in certain respects, but misstates the facts.  While true that Defendants had a centralized department for placing advertisements; it is undisputed that Defendants ceased using the job application form for contractors and no longer use it today.

More to the point, Nicole Dent sets forth in her declaration dozens of ways in which the driver contractors are different from how Velocity Express formerly treated its drivers.   *See* Dent Decl. Section E, ¶¶ 19-50.

## IV.      Conclusion.

As the undisputed facts demonstrate, Mr. Hendrickson and Mr. Wasik are not "employers" under the FLSA, and the Court should dismiss the Department's claims against these individual defendants.  They exercised no control over the day-to-day operations in the Portland, Oregon facility or over the individual contractors.  The corporate decision to convert to

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 23

an independent contractor system – and the conversion itself in Oregon – was completed before they were ever hired by Velocity Express.

Likewise, the delivery drivers at issue in this case were not Velocity Express employees. They were independent contractors to whom the FLSA does not apply.  Based on the undisputed materials facts, the Court should grant Defendants' motion and dismiss the Department's claims as a matter of law.

RESPECTFULLY SUBMITTED:  June 14, 2010.

LANE POWELL PC

By_____/s/ Nancy W. Anderson_____
    Leah C. Lively, OSB No. 96241
    Nancy W. Anderson, *admitted pro hac vice*
    Kirsten G. Daniels, *admitted pro hac vice*
    Telephone:  206.223.7000
Attorneys for Defendants Velocity Express, Inc.,
Jeffrey Hendrickson, Vincent Wasik

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 24

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107