LAWRENCE BREWSTER, Regional Solicitor
BRUCE L. BROWN, WSBA #18844
Associate Regional Solicitor
brown.bruce.l@dol.gov
JEREMIAH MILLER, WSBA #40949
Trial Attorney
miller.jeremiah@dol.gov
U.S. Department of Labor, Office of the Solicitor
1111 Third Avenue, Suite 945
Seattle, Washington 98101
Phone (206) 553-0940
Fax (206) 553-2768
Attorneys for Plaintiff Hilda L. Solis

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br>       Plaintiff,<br><br>                v.<br><br>VELOCITY EXPRESS, INC., a corporation; JEFFREY HENDRICKSON, an individual; VINCENT WASIK, an individual,<br>            Defendants. | CASE NO. CV-09-864-MO<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. Introduction

Defendants' 'Reply' in Opposition to Plaintiff's Motion for Partial Summary Judgment does not suffice to defeat Plaintiff's Motion for Partial Summary Judgment. Defendants seek to shield Vincent Wasik and Jeffrey Hendrickson from liability on one of two bases: (1) Mr. Wasik and Mr. Hendrickson were not frontline managers or (2) Mr. Wasik and Mr. Hendrickson had no actual control over the operations of Velocity Express, Inc. ("Velocity"). However, the fact that Mr. Wasik and Mr. Hendrickson were not city managers does not excuse their role in causing violations of the Fair Labor Standards Act of 1938, as Amended ("FLSA" or "Act," 29 U.S.C. §§ 201 *et seq*.). Further, Mr. Hendrickson and Mr. Wasik had control over significant aspects of the operations of Velocity, and so are properly considered employers under the Act. Therefore, Plaintiff submits the following Reply pursuant to Local Rules ("LR") 56, 7 and Federal Rule of Civil Procedure 56(c)(1)(C).[1]

## II. Facts

In the interest of brevity, Plaintiff incorporates the facts from Plaintiff's previously filed Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment. *See* Dkt. No. 46; *see also* Dkt. No. 45 (Plaintiff's Concise Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment). Plaintiff also underscores that ¶¶ 2-7, 9, 10, 13, 16, 17 and 20-31 of the Plaintiff's Concise Statement of Material Facts are undisputed by Defendants. *See* Dkt.

---

[1] Plaintiff notes that Defendants have requested oral argument with respect to Plaintiff's Motion for Summary Judgment; and with respect to Defendants Motion for Summary Judgment (Dkt. Nos. 48, 62). However, Defendants' response to Plaintiff's Motion for Summary Judgment was untimely (Dkt. No. 62); as is Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. No. 65) and Reply to Plaintiff's Response to Defendants Concise Statement of Material Facts (Dkt. No. 66). *See* LR 7-1(f)(1)-(2); LR 56-1(b)(3); Fed.R.Civ.P. 6, 56(c). Therefore, though Plaintiff does not presently seek any sanction for the lateness of Defendants' response or reply, under LR 7-1(d)(4)(A) or (B), Defendants have waived oral argument for either Motion for Summary Judgment.

No. 64 (Defendants' Response to Plaintiff's Concise Statement of Material Facts).  Where the material facts referenced in this Reply are disputed, Plaintiff will identify them with an accompanying asterisk.[2]

Defendants assert that a number of 'facts' are 'undisputed' with regard to the status of Vincent Wasik and Jeffrey Hendrickson under the FLSA.  Dkt. No. 62, pp. 10-12 (Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment).  This statement is not accurate.

With respect to ¶4 (Dkt. No. 62, p. 11), Plaintiff asserts that Mr. Wasik made the decision to terminate the remaining 300-500 delivery drivers correctly classified as employees, and to offer their positions to other delivery drivers incorrectly classified as independent contractors.  *See* Dkt. No. 45, ¶19\*.  Additionally, Mr. Hendrickson carefully monitored the elimination of these remaining drivers.  Id. at ¶32\*.

With respect to ¶5 (Dkt. No. 62, p. 11), Plaintiff asserts that Mr. Wasik and Mr. Hendrickson exercised control over the conditions of employment for delivery drivers in Portland, Oregon, by reason of (1) Mr. Wasik's general control of Velocity, and his supervisory control over lower level executives; and (2) Mr. Hendrickson supervisory authority with regard to divisional presidents that administered the day-to-day operations of Velocity.  *See* Dkt. No. 45, ¶¶ 2-4, 9, 10, 11\*, 23, 24, 31.

With respect to ¶7 (Dkt. No. 62, p. 11), Plaintiff asserts that, by virtue of the chain of command, pay decisions with regard to employees at any field office were ultimately controlled by both Mr. Wasik and Mr. Hendrickson.  *See* Dkt. No. 45, ¶¶ 2-4, 9, 10, 11\*, 17\*, 18\*, 23-25, 31.

---

[2] Plaintiff does not admit that these facts are correctly disputed.  *See* Plaintiff's Reply to Defendants' Response to Plaintiff's Concise Statement of Material Facts.  Rather, Plaintiff seeks to emphasize the undisputed nature of many important facts.

With respect to ¶10 (Dkt. No. 62, p. 12), Plaintiff asserts that at least Mr. Wasik reviewed training materials regarding the treatment of delivery drivers classified as 'independent contractors.' *See* Dkt. No. 45 ¶ 22.

The facts alleged by Defendants at ¶¶ 1-3, 6, 8, 9 and 11 (Dkt. No. 62, pp. 10-12), are immaterial. As a corporate officer may be an employer even though he or she delegates his or her authority to others, Mr. Wasik and Mr. Hendrickson are still properly considered employers for the purposes of the FLSA.

### III.  Authority

In the Ninth Circuit, if "an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over" the employment relationship, he or she is an employer for the purposes of the FLSA. Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009) (quoting Lambert v. Ackerly, 180 F.3d 997, 1012 (9th Cir. 1999)).

The five factor test that Defendants believe to be binding on this Court (*see* Dkt. No. 62, p. 14) is derived from the Lambert court's addition to factors found in Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1471 (9th Cir. 1983) (*overruled on other grounds in* Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985)).[3] However, these factors *are not mandatory*; as the Bonnette court remarked: "[t]he four factors [factors two through five according to Defendants] considered by the district court provide a useful framework for analysis *in this case*, *but they are not etched in stone and will not be blindly applied. The ultimate determination must be based 'upon the circumstances of the whole*

---

[3] Bonnette states the relevant factors as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470. Lambert added the important factor of "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions…." Lambert, 180 F.3d at 1012 (citing Bonnette at 1468-1470).

*activity*.'" Bonnette, 704 F.2d at 1470 (emphases supplied) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)); *accord* Hale v. Arizona, 993 F.2d 1387, 1394 (9th Cir. 1993) (Bonnette factors are inappropriate in the context of prison labor); Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1324 (9th Cir. 1991) (Bonnette factors are "merely guidelines"). As Boucher and Lambert demonstrate, courts in the Ninth Circuit are free to alter the test as necessary. Ultimately, the precise factors used to analyze an individual's status under the Act are less important than the economic realities of the employment relationship.[4]

Here, the realities of the situation suggest an analysis that is quantitatively different from the Bonnette/Lambert approach, though qualitatively the same. *See generally*, Dkt. No. 46. For example, in addressing the relationship between the putative employer and the employees, corporate officers who delegate their authority to others with regard to the day to day operations of a business are routinely found to be employers for the purposes of the FLSA. *See* Chao v. Pacific Stucco, Inc., 2006 WL 2432862 at *5 (D. Nev. 2006) (citing RSR Security Services, 172 F.3d at 139) ("[i]t is well established that a corporate officer without direct daily supervisory responsibilities over employees can still qualify as an employer under the FLSA"); *see also* Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 966 (6th Cir. 1991) ("[t]he fact that a payroll bookkeeper computed hours, overtime, and commissions and a general manager handled many of the day-to-day problems associated with operation of the corporation does not preclude finding that [the corporate president] was an employer"); Donovan v. Grim Hotel Co., 747 F.2d

---

[4] Also informative on this point is the Second Circuit's holding in Herman v. RSR Security Services, Ltd., 172 F.3d 132 (2nd Cir. 1999). Defendants incorrectly contend that RSR Security Services "counsels against the kind of cherry picking" allegedly engaged in by the Plaintiff. Dkt. No. 62, p. 18. The RSR Security Services court remarked that "[s]ince economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." Id. at 139 (emphasis in the original). This sentiment is counter to Defendants' expressed position that the Bonnette/Lambert factors are dispositive in this setting. *See* Dkt. No. 62, p.13.

966, 972 (5th Cir. 1984) *cert. denied* 471 U.S. 1124 (1985) (president of corporation who held the purse strings of the corporation and guided its policies, as well as selected the manager for each hotel was an employer); Shultz v. Mackfarland & Sons Roofing Co., 413 F.2d 1296, 1300 (5th Cir. 1969) (president and director of corporation was employer even though "supervisors and crew chiefs (foremen) had the authority to hire and fire employees and to set their rates of pay" because, in part, the president "still exercise[d] authority concerning the hiring and firing of supervisory personnel"). *Defendants do not dispute this rule*, acknowledging that the fact that a corporate officer may be an employer despite a lack of contact with employees is "uncontroversial." Dkt. No. 62, p. 26.

### IV. Analysis

Defendants devote the bulk of their response attempting to factually distinguish cases cited by Plaintiff from the matter before this Court.[5] Defendants' attempts are misplaced; factual variations are inevitable under a test considering the "the circumstances of the whole activity." Rutherford Food, 331 U.S. at 730. The cases cited by Plaintiff serve to illustrate the factors courts have found important in analyzing the economic reality of the working relationship.

A) **Control Over Velocity**

Plaintiff cites to Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150 (11th Cir. 2008) for the unremarkable proposition that a corporate officer need not have

---

[5] Defendants accuse Plaintiff of "cherry picking" facts from the cases that Plaintiff cites. Dkt. No. 62, p.15. However, this criticism misses the mark. As the status of Mr. Hendrickson and Mr. Wasik is determined by reference to the totality of the circumstances, it is appropriate to look at elements of the factual scenarios in other cases where corporate officers have been found to be employers. In fact, Defendants' attempt to dismiss persuasive reasoning by other courts on the basis that one or two facts are different from the present case itself violates the economic realities test. *See* note 4, *supra*.

exclusive control over an employing entity to be considered an employer for the purposes of the FLSA; that is, more than one corporate officer may be an employer under the Act. Alvarez Perez, at 1161 (quoting Elliott Travel, 942 F.2d at 966). Under the Eleventh Circuit's version of the economic realities test, a corporate office may be found to be an employer under the Act if he or she is "either … involved in the day-to-day operation or [has] some direct responsibility for the supervision of the employee." Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986).[6] The Alvarez Perez court concluded that the corporate officer in question was not an employer because he *neither* had operational control over the employing corporation *nor* had day to day supervision of affected employees. Alvarez Perez, at 1161. Here, Plaintiff has produced copious evidence that Mr. Wasik and Mr. Hendrickson had extensive operational control over Velocity. *See* Dkt. No. 46, p. 9-11; *see also* Dkt. No. 45.[7] Additionally, as noted *supra*, a corporate officer may be an employer by dint of the actions of his subordinate. *See*, *e.g*., Elliott Travel, 942 F.2d at 966. As all of the top executives reported to Mr. Wasik, and the divisional presidents (responsible for operations in each geographic area) reported to Mr. Hendrickson, they were responsible for Velocity's day to day operations, including personnel and pay decisions. *See* Dkt. No. 46; *see also* Dkt. 45, pp. 3, 5-6 (¶¶8-10, 11*, 24, 25 and 31).

In Olivas v. Little Havana Check Cash, Inc., 324 Fed. Appx. 839 (11th Cir. 2009), the Eleventh Circuit held that Sara Rodriguez (a corporate officer and share holder), who occasionally acted in the place of Francisco Rodriguez (another corporate officer and share holder), could be found to be an employer under the FLSA; at least where Mr. Rodriguez was

---

[6] Plaintiff is unaware of any Ninth Circuit case applying this disjunctive test to the status of an individual under the FLSA.

[7] Defendants imply that Velocity's Oregon operations were run without direction from the highest levels of Velocity's corporate structure. Such autonomy within a nation-wide corporation is patently absurd. *See generally* Dkt. Nos. 45-2, 45-6 (excerpts of the deposition transcript for Mr. Wasik and Velocity (by James Lindvall), respectively).

properly found to be an employer for the purposes of the Act. Olivas, at 845-846. Though the Rodriguez's had a different relationship to their employees than Mr. Wasik or Mr. Hendrickson, the fact remains that an individual's occasional operational control over a business can suffice to establish that individual's status as an employer. Id. (quoting Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir.1982)). Here, Mr. Hendrickson's power to act on behalf of Mr. Wasik in the latter's absence suggests that, if Mr. Wasik is an employer, then Mr. Hendrickson is an employer.[8]

Similarly, in Elliot Travel, the Sixth Circuit held that "[t]o be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions. The party need only have 'operational control of *significant aspects* of the corporation's day to day functions.'" Elliot Travel, 942 F.2d at 966 (emphasis in the original) (quoting Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983)). Despite Defendants' attempts to distinguish this case, it is analogous to the matter at hand. Mr. Wasik and Mr. Hendrickson controlled the purse strings of Velocity: they had to approve expenditures above a certain threshold. *See* Dkt. No. 46; *see also* Dkt. No. 45, pp. 4, 6 (¶¶17*, 29). Mr. Wasik and Mr. Hendrickson had delegated much of the day to day oversight of employees to subordinates, yet they maintained operational control of Velocity as a whole. Defendants also incorrectly assert that any ownership interest of less than 100% is not significant. *See* Dkt. No. 62, p. 22. Defendants do not cite, and Plaintiff is unaware of, any binding precedent holding this to be so. The significant ownership requirement goes to the ability of the corporate officers to control the corporation. Baystate, 163 F.3d at 678. Here, Mr. Wasik's and Mr. Hendrickson's substantial investment in Velocity would have added

---

[8] However, Mr. Hendrickson's status as an employer is *not* contingent on Mr. Wasik's status. Mr. Hendrickson exercised sufficient control over the operations of Velocity, directly through his control of financial transactions and through his control of his subordinate divisional presidents, to be an employer for any of Velocity's employees. *See* Dkt. No. 46, p. 10-11.

to their already extensive control of Velocity. Additionally, their personal investment in Velocity created an incentive to act in ways that benefit the corporation at the expense of the undercompensated workers. Id. In any event, corporate officers are routinely found to be employers even where they have *no* ownership interest. See Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir.1983); *see also* Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 & n.9 (1st Cir. 2007) (lack of evidence regarding the ownership interest of the corporate officers did not defeat the claim that they were employers).

Courts look to the impact that the corporate officer's actions have on the operations of the corporation to determine their status. In Hotel Oasis the First Circuit found that the actions taken by the president of the corporation indicated that the president was "instrumental in 'causing' the corporation to violate the FLSA." Id. (quoting Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir.1983)). Mr. Wasik's and Mr. Hendrickson's actions in their capacity as corporate officers for Velocity were likewise 'instrumental' in causing Velocity to improperly pay their delivery drivers. *See* Dkt. No. 46.

### B) **Control Over Employees**

In analyzing the role of a corporate officer in employee matters, the First Circuit held that, where an individual "was not just any employee with some supervisory control over other employees" but rather "was the president of the corporation, and … had ultimate control over the business's day-to-day operations" that individual could properly be considered an employer under the Act. Hotel Oasis, 493 F.3d at 34. Again, Defendants imply that, because Mr. Wasik and Mr. Hendrickson did not make decisions affecting employees at the lowest level (i.e. field offices), they cannot be considered to be employers for the purposes of the FLSA. Dkt. No. 62, p. 18. As the ultimate authority within Velocity, Mr. Wasik was responsible for the decisions

made by his subordinates, including pay and personnel decisions made by Executive Vice President of Workforce Services, Kay Durbin. *See* Dkt. No. 46; *see also* Dkt. No. 45, pp. 3, 5 (¶¶10, 21, 25). This authority comports well with the First Circuit's recitation of facts in Hotel Oasis. Hotel Oasis, at 34.

Further, in RSR Security Services, 172 F.3d at 140, the Second Circuit held that the fact that the officer had hired and fired "mainly managerial staff, [and] the fact that he hired individuals who were in charge of the [employees] … [are] strong indication[s] of control." Effectively, the Second Circuit recognized that an officer may have sufficient control over the employment relationship where those with frontline personnel responsibilities are beholden to that officer. *See* Id. (citing Grim Hotel, 747 F.2d at 972); *see also* Dkt. No. 62, p. 26 (Defendants acknowledge "the uncontroversial statement that a corporate officer without direct daily supervisory responsibilities over employees can still qualify as an employer under the FLSA"). Here, Mr. Wasik retained and supervised all of the high-level corporate officers and Mr. Hendrickson supervised those with direct control over the operations and personnel decisions of Velocity. *See* Dkt. No. 46; *see also* Dkt. 45, pp. 3, 5-6 (¶¶8-10, 11*, 24, 25 and 31).

Defendants attempt to find support for their theory that corporate officers must exercise frontline control over employees in Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668 (1st Cir. 1998). However, Defendants misstate the holding of Baystate: the First Circuit held that managers, who exercised some authority over employees, must be shown to have some control over the corporation in order to be considered employers. Id. at 678. The Baystate court held that control over the corporate structure was a necessary precondition for employer status; *it did not*, however, hold that frontline control over employees was also a necessary precondition for such status. In fact, many other courts have held that frontline management of employees is

*not* a necessary precedent to the conclusion that a given individual is an employer. *See*, *e.g.*, Elliott Travel, 942 F.2d at 966; *see also* Dkt. No. 62, p. 26.[9]  Again, the fact that Mr. Wasik and Mr. Hendrickson supervised those who managed Velocity's employees demonstrates control in keeping with the economic reality test endorsed by the Supreme Court.

Plaintiff cites to Pacific Stucco, 2006 WL 2432862 at *5 for the "uncontroversial statement" (Dkt. No. 62, p. 26) that a corporate officer need not have direct supervision over employees in order to be an employer for the purposes of the FLSA.  The Pacific Stucco court held that a corporate president and general manager could be an employer despite the fact that he "did not personally hire and does not directly supervise the employees whose wages are at issue in this case."  Id.  Further, the court held that requiring direct supervision "contradicts the accepted expansive definition of 'employer' under the FLSA."  Id.  Like the corporate officer in Pacific Stucco, Mr. Wasik and Mr. Hendrickson had broad control over the operations of Velocity.  *See generally* Dkt. No. 46.  Mr. Wasik was directly responsible for personnel decisions through his supervision of Ms. Durbin.  Dkt. No. 45, pp. 4-5 (¶¶19*, 20, 22, 25).  Mr. Hendrickson was directly responsible for policies relating to employees through his subordinate divisional presidents.  Dkt. No. 45, pp. 5, 6 (¶¶25, 31).[10]

---

[9] Defendants' contention to the contrary would produce results that could not have been intended under the FLSA; if frontline control were a sufficient condition for employer status, the assistant manager who signed off on an employee's inaccurate timecard would be liable under the FLSA despite having been ordered to do so by the owner of the business.  *See*, *e.g.* Agnew, 712 F.2d at 1513.

[10] In their analysis of Pacific Stucco, Defendants attempt to distinguish this case based on the advice received by Defendants regarding the legality of their reclassification of delivery drivers. *See* Dkt. No. 62, p. 23.  Defendants' questionable legal advice (and rulings from courts and administrative tribunals under laws other than the Act) does not bear on the decision of Mr. Wasik and Mr. Hendrickson to continue the plan to eliminate delivery drivers correctly classified as employees and replace them with misclassified delivery drivers; at least with regard to their status as employers.  At best, this argument would go to the availability of liquidated damages against Mr. Wasik and Mr. Hendrickson.  *See*, *e.g.*, A-One, 346 F.3d at 920.

**C)** <u>Titles</u>

The fact that a corporate officer holds an executive position in a corporation is some evidence that that officer is an employer under the Act. Defendants misread <u>Baker v. D.A.R.A. II, Inc.</u>, 2008 WL 191995 (D. Ariz. 2008). The <u>Baker</u> court merely held that the plaintiff in that case had carried her burden with respect to the status of Dara Wintersteen as employer. <u>Id</u>. at *8. Though it is not explicit in its holding, the court's indication that the plaintiff had made a *prima facie* case merely entails the conclusion that the plaintiff had put on enough evidence to survive a motion to dismiss. <u>Id</u>.; *see also* Fed.R.Civ.P. 12(b)(6). The court viewed Ms. Wintersteen's status as a corporate officer as some evidence that she was an employer. <u>Baker</u>, at *8.

Similarly, in <u>Harper v. Wilson</u>, 302 F.Supp.2d 873 (N.D. Ill. 2004), the district court held that corporate officers were liable as employers for violations of the FLSA by their corporation. <u>Id</u>. at 883. The district court cited to <u>Scarbrough v. Perez</u>, 870 F.2d 1079, 1082 (6th Cir.1989); <u>Scarbrough</u> (an Employment Retirement and Income Security Act case) describes the scope of the definition of employer under the Act with regard to <u>Agnew</u> and <u>Grim Hotel</u>. <u>Scarbrough</u>, at 1082. In support of its conclusion, the <u>Harper</u> court apparently relied on the fact that the two corporate officers held the positions of vice president and president/CEO. <u>Harper</u>, 302 F.Supp. at 883.

**D)** **Cole Enterprises**

In <u>U.S. Dept. of Labor v. Cole Enterprises, Inc.</u>, 62 F.3d 775 (6th Cir. 1995), the court approved a district court determination that a corporate officer was an employer. <u>Id</u>. at 778. Among other factors supporting that conclusion, the Sixth Circuit cited the fact that the corporate officer was "authorized to issue checks on the corporate accounts…." <u>Id</u>. The <u>Cole Enterprises</u> court also cited the fact that the officer "was engaged in running the business…" and the fact that

the officer (along with another officer) "determined the employment practices for the [corporation], including hiring, firing, rates of pay and hours of work" in approving the lower court's ruling. Id. Here, it is undisputed that Mr. Wasik was authorized to issue checks from Velocity's corporate accounts; it is further undisputed that Mr. Wasik directed the business endeavors of Velocity. See Dkt. No. 46; see also Dkt. No. 45, pp. 2, 4 (¶¶3, 4, 16). Mr. Wasik also controlled the hiring, firing and rates of pay for employees by virtue of his control of his subordinates; similarly, Mr. Hendrickson controlled these aspects of the employment relationship through his control of his subordinate divisional presidents. See See Dkt. No. 46; see also Dkt. No. 45, pp. 3, 6 (¶¶8-10, 11*, 31). As with Defendants' other attempts to distinguish cases, the fact that some of the facts in this case are different from those in Cole Enterprises does not destroy Cole Enterprises' value in determining the scope of the economic realities test.

E)   **Agnew, Baystate and Sabine Irrigation.**

Donovan v. Agnew, 715 F.2d 1509 (1st Cir. 1983) is a widely cited case examining the meaning of "employer" in the context of the FLSA. See, e.g., RSR Security Services, 172 F.3d at 140 (Second Circuit); Grim Hotel, 747 F.2d at 972 (Sixth Circuit); Boucher, 547 F.3d at 1094 (Ninth Circuit); Patel, 803 F.2d at 637-638 (Eleventh Circuit); Baird v. Kessler, 172 F.Supp.2d 1305, 1311 (E.D. Cal. 2001) aff'd 81 Fed.Appx. 249 (9th Cir. 2003); Pineda-Marin v. Classic Painting, Inc., 2010 WL 1257616 at *11 (D. Or. 2010). Contrary to Defendants assertion, it is clear that Mr. Wasik and Mr. Hendrickson "actively engaged in the management, supervision and oversight of [the corporation's] affairs, including employee compensation and benefits." See Agnew, 715 F.2d at 1511. Mr. Wasik's primary responsibility was corporate governance; he selected and/or approved of the senior management team, all of whom reported to him. See Dkt. No. 46; see also Dkt. No. 45, pp. 2, 3 (¶¶3, 8-10, 11*). Through his subordinates, Mr. Wasik

was ultimately responsible for personnel decisions including employee compensation.  *See* Dkt. No. 45, pp. 3, 5 (¶¶10, 21).  Similarly, Mr. Hendrickson was generally responsible for the operations of Velocity, a responsibility he exercised through his subordinate divisional presidents.  *See* Dkt. No. 46; *see also* Dkt. No. 45, pp. 5,6 (¶¶24, 31).

Defendants choose to skirt an important element in Agnew:  a corporate officer's role in continuing operations despite financial adversity.  *See* Dkt. No. 62, p. 25 n.7.  The court in Agnew made a compelling case for considering a corporate officer's role in maintaining operations in the face of bankruptcy as evidence supporting a finding that the officer was an employer within the meaning of the Act.  In approving the district court ruling, the First Circuit noted

> appellant Bradley … personally supervised the cash flow of the company on a day to day basis, was personally involved in decisions about layoffs and employee overtime hours….  [T]he [district court] found that 'Agnew and Bradley as principals of the firm knowingly undertook a calculated risk to keep the plant open, in spite of layoff recommendations from the bank … and in spite of the company's inability fully to fulfill its statutory obligations to its employees.'

Id. at 1511.  In Baystate the First Circuit further explained this reasoning, remarking that "Agnew's economic reality analysis focused on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits."  Baystate, 163 F.3d at 678.

Following a similar line of reasoning, the Fifth Circuit found that the actions of a corporate officer in permitting the corporation to continue operations despite impending bankruptcy were significant in determining that the corporate officer was an employer.  Donovan v. Sabine Irrigation Co., 695 F.2d 190, 196 (5th Cir. 1983) *cert. denied* 463 U.S. 1207 (1983).  Defendants erroneously claim that the import of the corporate officer's 'financial gymnastics' in Sabine Irrigation was that they were tied to payroll.  Dkt. No. 62, p. 27.  In fact, the Sabine

Irrigation court was most interested in the corporate officer's financial transactions because they made "it possible for Sabine to meet its payroll and keep its employees supplied with the equipment and materials necessary to perform their jobs." Sabine Irrigation, 685 F.2d at 196. In other words, it was the fact that the corporate officer's actions allowed the corporation to remain in business that indicated that he was an employer under the FLSA.[11]

Here, Mr. Wasik devoted significant time to ensuring that Velocity stayed solvent; those efforts included eliminating the remaining 300-500 delivery drivers correctly classified as employees (saving Velocity between five and seven million dollars per year) and raising funds from outside investors. *See* Dkt. No. 46; *see also* Dkt. No. 45, p. 4 (¶¶14*, 19*). These actions clearly resulted in the continued operations of Velocity including their continued employment practices. Mr. Wasik's actions demonstrate that he had economic control over the working relationship with all of Velocity's employees: had Velocity simply declared bankruptcy and ceased operations in 2003, there would be no remaining employees.

## V. Conclusion

Plaintiff respectfully submits that the above supports her Motion for Partial Summary Judgment. Defendants erroneously contend that (1) Mr. Wasik and Mr. Hendrickson cannot be employers because they occupy positions that are so senior as to be wholly removed from personnel decisions and (2) that, despite these elevated positions within the corporate structure, they do not exercise sufficient control over Velocity to be held accountable for its actions. On the contrary, Mr. Wasik and Mr. Hendrickson occupied commanding positions within Velocity that allowed them to dominate significant aspects of Velocity's operations including its

---

[11] Defendants also urge this court to disregard Mr. Wasik's actions in continuing the operations of Velocity because a comparable factor is not found in the Bonnette/Lambert statement of the test for employer status. Dkt. No. 62, p. 14 n.3. As noted *supra*, no such mechanical application of the economic realities test is required by controlling precedent.

relationship to its workers. Defendants' fantastic version of the economic realities of the situation should be wholly discounted.

Further, Defendants inappropriately focus on isolated facts from cases determining the status of corporate officers. Defendants apparently believe that, because no prior case has addressed facts identical to the facts at bar in this case, there is no persuasive authority available. This is simply wrong. Looking to the facts in this case, analogy to elements of several other cases demonstrates that Mr. Wasik and Mr. Hendrickson are employers for the purposes of the FLSA. *See* Dkt. No. 46. Plaintiff's Motion for Partial Summary Judgment should be granted in its entirety.

Dated:  June 15, 2010

         M. PATRICIA SMITH
         Solicitor of Labor
         LAWRENCE BREWSTER
         Regional Solicitor
         BRUCE L. BROWN
         Associate Regional Solicitor
         JEREMIAH MILLER
         Trial Attorney

By: s/ Jeremiah Miller
   JEREMIAH MILLER, WSBA #40949

Attorneys for Plaintiff Hilda L. Solis
Secretary of Labor
United States Department of Labor
Office of the Solicitor
1111 Third Avenue, Suite 945
Seattle, Washington 98101
P. (206) 553-0940; F. (206) 553-2768
Email: miller.jeremiah@dol.gov